UNITED STATES DISTRICT COURT
for the **Eastern District** of **Virginia**
Norfolk Division

Joelle Angel,
    Plaintiff  (Pro Se)
V.
Ameka D. Riddick,
Alliance Investment & Consulting, LLC.
Alliance Property Holdings,
Kim Philippi,
Chang Philippi, &
Lionel T. Hines. Sr.
    Defendants
   (Individually & collectively)

Case No.   2:21cv554

28 USC § 1331

FILED
SEP 30 2021
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

The Older Americans Act: 1965

Supreme Ct. of Va. 1991 (Dudley v. Offender Aid ...)

Jury Trial requested

### COMPLAINT [Affidavit]

Now comes the [pro se] Plaintiff requesting this Court to grant relief from defendants for 'aiding and abetting' their tenant in harassing and exploiting an elderly citizen and Condo owner-occupant. Via the 'Older Americans Act,' Plaintiff is seeking: protective order(s); court-ordered 'relocation;' and punitive damages to stop a young Tenant, her property manager, and landlord(s) from exploiting an older American via:
- multiple false criminal charges;
- violent threats;
- curse & abuse;
- property destruction;
- 'disorderly conduct;'

Consequently, defendants are • disturbing the peace and • abusing the court and justice system.

Plaintiff has reported the young Tenant to her landlord(s) and [acting] property manager, and even sought state court injunctions. However, the tenant persists in injuring Plaintiff and abusing the justice system, with the sly and subtle encouragement of the landlord(s) and acting property manager.

Violations of federal and state 'elderly protection' laws and legal authority include the following:
- US Code
    42 US Code § 3001 (3) & (10) -- Abuse of 'Older Persons':
- Va. Code
    §18.2-416 – Punishment for Abusive Language;    §18.2-137 – Injuring, etc., any Property;
    §18.2-415 -- Disorderly Conduct;    §18.2-461 -- False reports to law enforcement;
    §18.2-46.5 – Aiding and Abetting Acts of Terrorism:
- Supreme Ct. of Va., 1991 (Dudley v. Offender Aid and Restoration...)
    "... failing to exercise reasonable care to prevent [Tenant] from doing harm."

Accordingly, defendants have committed the foregoing violations and **claims**. All defendants are vicariously liable for 'aiding and abetting' the young Tenant and "*failing to exercise reasonable care*" (Dudley v. Offender Aid and Restoration...) to prevent Tenant from: cursing and abusing Plaintiff; damaging her property; threatening her life; and filing false charges against her. Thus, they are equally liable for "*lack of protection against abuse, neglect, and exploitation.*"

### Introduction

*T*his owner-occupant Plaintiff is asserting the most important secular claims that can be put forward by older American homeowners: the claim to the full measure of the right to peacefully enjoy her property and the inseparably connected but even more important claim to physical safety in the community, without the threat of violence and false charges at the hands of a neighboring, young tenant. [1]

---

[1] Adapted from "Brief for the Appellants," Brown v. Board of Education, U.S. Supreme Court, 1954; Landmark Briefs and Arguments of the Supreme Court of the United States: Constitutional Law (Charles L. Black, Jr., co-writer).

## PARTIES

1. Plaintiff Joelle Angel has been 'owner-occupant' of condo unit 1631 Darren Cir. / Ports., VA 23701 for more than 3 years. She purchased the Charlestowne condo unit from the US Dept. of HUD on July 10, 2018. At age 66 (Dec. 23, 1954), Plaintiff is scheduled to be tried on Oct. 27, 2021 for a <u>false</u> 'trespassing' charge and 'protective order' (filed by Def. Ameka Riddick).

2. Defendant Ameka D. Riddick, age 46 (April 6, 1975), is the Tenant accused of damaging Plaintiff's property, harassing, and threatening her life, & filing false charges. Her [illegal] background includes:
   - 2003 charged with: Brandishing a firearm.   • 2003 charged with: Assault & Battery.
   
   Def.'s legal address since Oct. 2019: 1629 Darren Circle/ Ports., VA 23701.
   
   2. a. Tenant has falsified multiple protective orders and false charges against Plaintiff.

3. Defendant Alliance Investment & Consulting, LLC is the <u>former</u> owner and landlord of condo unit 1629 Darren Cir., Portsmouth, VA (next door to Plaintiff). Kim Philippi is the Registered Agent.
   
   3. a. The business LLC is vicariously liable for: Tenant's destruction of Plaintiff's property; curse and abuse; violent threats, and filing false charges.

4. Defendant Kim Philippi (DBA Alliance Investment & Consulting, LLC) is the former landlord of condo unit 1629 Darren Cir. (next door to Plaintiff). Kim Philippi is the Registered Agent. She is a licensed real estate agent/ broker. Although Def.'s legal business address is a post office box (2109 Thoroughgood Rd. # 55469), the Reg. Agent's legal physical address is 1408 Duck Run Ct. / Va. Beach, VA 23455.
   
   4. a. On Jan. 14, 2020, Kim Philippi transferred the problem tenant's condo unit to a relative's business trust, shortly after Plaintiff complained to the acting property manager about Tenant's numerous disturbances and disorderly conduct. However, Ms. Philippi declined to address the matter.
   
   4. b. Thus, Def. Kim Philippi is vicariously liable for the Tenant's destruction of Plaintiff's property, curse and abuse, violent threats, and filing false charges against the Plaintiff.

5. Defendant Alliance Property Holdings is the <u>current</u> owner and landlord of condo unit 1629 Darren Cir. (next door to Plaintiff). Chang Philippi is the Registered Agent.
   
   5. a. The business trust is vicariously liable for: Tenant's destruction of Plaintiff's property; curse and abuse; violent threats; and filing false charges.

6. Defendant Chang Philippi (DBA Alliance Property Holdings) is the current landlord of condo unit 1629 Darren Cir. (next door to Plaintiff). Chang Philippi is the Registered Agent. Although Def.'s legal business address is a post office box (2109 Thoroughgood Rd. # 55469), the Reg. Agent's legal physical address is 1408 Duck Run Ct. / Va. Beach, VA 23455.
   
   6. a. Def. Chang Philippi is vicariously liable for: Tenant's destruction of Plaintiff's property; curse and abuse; violent threats, and filing false charges against Plaintiff.

7. Both Def's. Philippi refused to *"exercise reasonable care to prevent harm, in reckless disregard"* of Plaintiff's request. Their legal physical address: 1408 Duck Run Ct./ Va. Beach, VA 23455.

8. Defendant Lionel T. Hines, Sr. is the <u>acting</u> Property Manager hired by Chang & Kim Philippi to mananage their Charlestowne condo rental units, including 1629 Darren Circle (next door to Plaintiff). He has managed their rental units for exceeding 10 years. Def. Hines' legal address: 119 Kings Gate Dr./ Portsmouth, VA 23701.
   
   8. a. On numerous occasions, Plaintiff has informed Def. Hines of Tenant's disturbances and disorderly conduct, but he declined to address the matter. He refused to *"exercise reasonable care to prevent harm, in reckless disregard"* of Plaintiff's request.
   
   8. b. Thus, Def. Hines is vicariously liable for: Tenant's destruction of Plaintiff's property; curse and abuse; threatening her life; and filing false charges against Plaintiff.

9. **Supreme Court of Virginia** affirmed '**piercing the corporate veil**' to avoid injustice:

> **Thomas W. Dana, et al. v. 313 Freemason, a Condominium Association, Inc.**
> **Supreme Court of Virginia** Record No. 030450: Oct. 31, 2003.
>
> "Condominium association brought action against close corporation that developed condominium for breach of statutory warranty based on defects in building. After jury trial, the Circuit Court, City of Norfolk, John C. Morrison Jr., J., **granted** association's **motion to pierce corporate veil** and awarded $ 61,213.17 in attorney fees. Corporation shareholders appealed. The Supreme Court, Lawrence L. Koontz, Jr., J., held that: (1) evidence supported finding that corporate entity was created to evade personal liability; (2) evidence supported finding that separate personalities of corporation and its shareholders did not exist; and (3) piercing veil of close corporation was **necessary to avoid an injustice**. Affirmed"

**FACTS**

10. **Curse and Abuse & Violent Threats:** (Excerpt from: Letter to Landlord & Property Manager)

**2019**

Oct. 21, 2019: **Disturbing the Peace**
(10:00 p.m.) Plaintiff left a voicemail msg. & sent a text to acting Property Manager Lionel Hines concerning the Tenant's loud, disturbing music, singing/ screaming, and yelling through the wall.
She informed him that she had spoken to the Tenant, requesting her to lower the volume.
Def. Hines did not return Plaintiff's call. His text response was: "*Ok.*"

Dec. 12, '19 : **Disturbing the Peace / Curse & Abuse / Violent Threats**
Jan. 3, "20 Plaintiff repeatedly text Def. Hines about calling the Police due to Tenant's combative and belligerent behavior: loud stereo noise (violating the Noise Ordinance); beating on the wall; yelling and cussing through the wall; & from the back yard; threatening to beat Plaintiff; and curse and abuse.

**2020**

Jan. 13, 2020: **Disturbing the Peace / Curse & Abuse / Violent Threats**
(6:58 p.m.) Plaintiff left a voicemail msg. & sent a text to acting Property Manager Hines concerning the Tenant's even louder disturbing music, singing/ screaming, and yelling through the wall (wild party). Plaintiff requested Def. Hines to call her about the Tenant and her associates cussing at her from the backyard, as well as parading in front of her house cussing and yelling insults.

Def. Hines text back: "*I am in bed sick with the flu. I would just call the Police.*"

Plaintiff text that she had called Police and that "*Tenant is now loudly cussing at me.*"
Def. Hines text back:
"*It's the two sisters there. They said their uncle pass[ed] away today, so its probably the visiting sister all loud.*"

Plaintiff's 3rd text: "No, its both of them cussing & threatening me from the backyard, because my door is open. They are taking turns, while the music is blasting. This has happened several times, but it's the 1st time I've heard the loud fight [earlier today] between the Mother & daughter cussing each other and throwing someone against my wall."

(9:55 p.m.) Plaintiff's 4th text: "Police just left. Officer spoke to Tenant privately and said he advised her to keep her music down & not say anything to her neighbor. He said, "*that included cussing.*"

Plaintiff's 5th text: "I would like to know what you intend to do about your Tenant(s)? RSVP. The LORD's health coming your way! Ms. Angel" Def. Hines did not respond.

[*see* **Exhibit 1:** Affidavit Letter]

3

11. **Negligence of Landlord & Property Manager**:   (Excerpt from Letter to Landlord & Property Manager)

---

**2020**

**Jan. 14, 2020:** **Report of Harassment to Property Manager**
(2:58 p.m.)    Plaintiff's 1st text:
   "Tenant came to my door.  I spoke to her from upstairs window.  She said she did not want the Police coming to her house, and she would continue to play her music.  Plaintiff reminded her that *"Police told you not to come near my door or say anything to me."*

   Plaintiff asked what Def. Hines or Landlord Kim Philippi intended to do about it?"

   Plaintiff's 2nd text: "Hello, what is your tenant's first and last name?"

   Def. Hines text back: *"I can't give you that. Just call the Police. They will handle it."*

(5:01 p.m.)    Plaintiff's 3rd text:
   "Police officer came and said he could not get her name because crime had not occurred yet.  He suggested that I get her name from Property management.  He went next door to speak with her.  I really don't want to have to take Kim to Court to get the Tenant's name or an eviction.  Blessed Day."

   Def. Hines text back: *"I talked to her and I have talked to Kim."*

   Plaintiff's 4th text:
   "That info. does not help at all.  You [supposedly] talked to her last night. … ?"
       … I am not going to sit by and wait for the next episode."

Jan. 14, '20    **Transfer of Condo Unit**
   Def. Kim Philippi transferred the problem tenant's condo unit to Def. Chang Philippi's business trust.  However, Ms. Philippi declined to address the matter with Complainant.

Feb. 14, '20    **Report of 'Disturbing the Peace,' / Harassment / Curse & Abuse**
3/3 '20    Plaintiff continued to text Def. Hines about Tenant's combative and belligerent behavior:
   loud stereo noise (violating the noise ordinance);  beating on the wall;  yelling and cussing through the wall;  & from the back yard;  threatening to beat Plaintiff;
   and curse and abuse.

March 4, '20:    **Received Call from Property Manager**
   Def. Hines dialed Plaintiff's number and just started talking.
       She inquired who he wanted to speak to?        He said, *"Ms. Riddick."*
       Plaintiff told him, "You are speaking to Ms. Angel.  I live next door to your Tenant."
       He abruptly responded, *Ok!,"* then hung up.  …

March 23, '20:    **Confrontation with Landlord**
   Plaintiff drove to Landlord Kim Philippi's house and rang her intercom (outside the gate).
       After she answered, Plaintiff identified herself and wanted Ms. Philippi to speak to the Charlestowne condo Tenant at 1629 Darren Circle about the constant disturbance,
       *"… because the property manager is not doing anything about it."*

   Def. Kim Philippi yelled at Plaintiff,
       *"I have a property manager, and you should talk to him!  Don't come to my house again!"*
       Then, she threatened to call the Police.  Plaintiff yelled back,
       "I just told you, 'Mr. Hines is not doing anything about it!'"

   Def. Philippi hung up!                                       [*see* **Exhibit 1:** Affidavit Letter]

4

12. **Property Destruction / Harassment / Curse & Abuse**

## 20**20**

**April 19, 2020: Destruction of Property**
Tenant snatched up Plaintiff's flowers, while loud talking to her friends.
I text the property manager that I would be filing Court complaints against him & Landlord.

**June 10, 2020: Property Destruction**
Tenant destroyed Plaintiff's property: Ms. Riddick pulled up numerous flowers from my flower bed and threw them (with attached dirt) onto my walkway and into my flower bed. Because I discovered it at night, I walked in the dirt, tracked it in my house, and soiled my ceramic tile and carpet.

**(11:48 p.m.): Police obtained Testimony**
Police Officer. arrived, went next door & spoke w/ Tenant.
He asked if she pulled up the flowers next door and threw them on the neighbor's property. She responded, *"Because they were on my side!"*

**June 15, 2020: Court Filing against Tenant**
Plaintiff filed a property damage claim against the Tenant in Ports. Gen. Dist. Court.

**July 4, 2020: Trashed My Property**
Tenant encouraged her teenage son to discharge firecrackers in front of my walkway and leave the waste in front of my house.

**July 17, 2020: Violent Threat: Tenant threatened to shoot Plaintiff:**
Tenant drove up and parked in her parking space beside Plaintiff, who was sitting in her own car. Plaintiff smiled at the Tenant. However, as Tenant exited her vehicle, she cussed at Plaintiff and threatened to shoot her:
*"I'm so tired of you, Bitch. I'm gon'na fire on your ass!"*

**July 24, 2020: Harassment/ Curse and Abuse**
A neighbor drove behind me, incase Tenant was waiting for me beside my front door.
[As I drove up], Tenant came out of her house to harass me tonight. I drove off, called the Police, & waited for their arrival. 2 police officers drove behind me, then stood in the parking lot while I walked to my door. She stood in front of her door cussing at me and about me and boasted,
*"Mr. Don Scott is my lawyer, and Louise Lucas is my Auntie."*
I smiled & kept walking in the house. I left the house immediately to tell the officers what she said & asked if they heard her.

**July 25, 2020: Disturbing the Peace**
(9:55 p.m.) Tenant played loud, disturbing music, singing/ screaming, and yelling through the wall (past 10:00 p.m. Noise Ordinance).

**Aug. 4, 2020: Illegally Parked behind My Car, Blocking Me in**
Tenant illegally parked behind Plaintiff's car, blocking her from exiting her own parking space. Plaintiff called the Police. Police told Tenant to move her vehicle. Before moving the car, Tenant walked the sidewalk cussing at Plaintiff who stood inside her home looking out of the door:
*"God gon' get yo' ass! God don't like ugly, and He gon' sho' fix yo' ass. You just wait, bitch! God gon' fix yo' ass!" He' gon' mess yo' ass up!!!"*
Then she threatened to falsify a complaint against the Plaintiff:
I'm goin' straight to the Magistrate de'morrow. You watch!

13. **Disorderly Conduct / Harassment / Curse & Abuse**

### 20**20**

**Sept. 10, 2020  Harassment**
Ms. Riddick harassed me by <u>falsifying</u> to my guest that I was "*crazy*" and that I "*had taken her to court.*

### 20**21**

**Feb. 24, '21: Harassment/ Curse and Abuse**
Ms. Riddick harassed me loudly with a neighboring tenant (Ms. ___ Barner @1627 Darren Circle). They stood on the sidewalk in front on my house and profanely berated me (while I visibly stood inside, at my front door, then sat in my car). Loudly, they said:

> "*I hate that bitch!" She 'gon get fucked up one day. Yep. Somebody 'gonna do it.
> My son is so ti'ed of her. He wan'na move now. I cussed my landlord out
> 'cause he didn't warn me 'bout her. That bitch so fucking crazy!
> Is your landlord-uncle still in the hospital? No. He out now, but I told him
> I want to move from her.*"

**Feb. 14, April 6, May 4, & May 27, 2021: Curse & Abuse**
Ms. Riddick played her stereo loudly and screamed profanity and other verbal abuse through the wall after the 10:00 p.m. Noise Ordinance. As usual, I text the property manager that I had called the Police, since he had advised me to do so shortly after she moved in (Oct. 2019).

**May 20, 2021: Stopped My Worker from Completing Hired Work**
Ms. Riddick harassed me by stopping a person I had hired to do exterior pressure washing:
I was away when the man called and told me that while he was pressure washing my sidewalk, Ms. Riddick approached him and low-ratted me for 23 minutes. She made the following comments:

> "*My brother did mine* (as if he cared).
> *That lady crazy. She took me to court. I can't stand her.*"

He also said she made innuendos -- offering him physical intimacy. He chose not to disrespect me by stating her exact words. I apologized to him and explained her behavioral health condition: Additionally, she has frequently commented about me to the Police (in my presence):

> "*She need a man. Sheen 'got no man.*"

The next day (May 21) as the Worker was ending the 2nd phase, he called me and said he asked a friend and his son to stand on the sidewalk to watch while he stood on a ladder to pressure wash above my front door. He did not want Ms. Riddick to come from next-door and startle him with more comments, causing him to fall. Although he had not finished the job, he politely declined to return, assuming that she wanted to talk to him alone. I informed her property manager.

**May 31, 2021  Disturbing the Peace / disorderly Conduct**
Ms. Riddick harassed me by profanely yelling and <u>falsifying</u> to 2 neighbors:

> "*This crazy neighbor of mine is still getting on my nerves. I hate her **old** ass.
> If she sees me on the road, she be waving at me, blowing her horn, and er'thang.*"

They stopped to listen, turned and faced her; then entered their car. On a previous occasion (in Jan. '21), One neighbor nodded her head to Ms. Riddick (in acknowledgment of the comments).

[*see* **Exhibit 2:** Affidavit Testimony]

14. **Curse & Abuse / Disturbing the Peace /  False Charges** / Abuse of Justice System::

<div style="border:1px solid black; padding:10px;">

<div align="center">**2021**</div>

June 20, 2021: **Curse & Abuse**

    Ms. Riddick pretended to be on the phone as she berated me with loud, rude comments:
    When I stepped into my backyard, she said:   *"I can't stand that fucking bitch."*   etc.
        Immediately, I prayed loudly in an unknown language (speaking in tongues) to drown out her insults.  More importantly, this would prevent her from lying about what I said.
        Then she yelled, *"My aunt coming over here with her holy oil.*
                  *She 'gonna put it in my backyard!*
            *I'm going to the neighbors and tell 'em all 'bout you."*

June 21, 2021:  **Curse & Abuse**
11:45 p.m.    In her backyard (next door to mine), Ms. Riddick yelled loud, rude comments about me to her guest:

        *"She outside listening now, trying to hear.  The nosy bitch. "*

As she continued, I prayed loudly in an unknown language (speaking in tongues) to drown out her loud insults and prevent her from lying about what I said.

Ms. Riddick has been trying for 1 ½ years to provoke me to respond defensively, but each time, I have outsmarted her.

June 22, 2021:    **Disturbing the Peace  &  Harassment**
12:41 a.m.    Ms. Riddick harassed me by playing extremely loud stereo music in her backyard (well after the 10:00 p.m. 'Noise Ordinance curfew').'  She also yelled statements to GOD to remove me:
        *"Remove Ms. Angel, GOD.  Get her out of here.*
         *I'm spreading this holy oil.  Please hear me, GOD.*
         *Remove her now!"*
I called the Police to report her.

June 22, 2021:  **False Charges**
    Ms. Riddick <u>filed</u> <u>false</u> <u>charges</u> against me and obtained an Emergency Protective Order (EPO) for the absurdity of *"speaking in an unknown tongue"* and *"fear of putting a curse on* [her.]"  This was a violation of my 1st Amendment Constitutional right to "freedom of religion."  She also filed 'petition for prelim. protective order,' expressing the same absurd complaint, but it was dismissed in Court on July 9, 2021.

<div align="right">[see **Exhibit 3:**  Affidavit  Complaint]</div>

</div>

15. **Disorderly Conduct / Curse & Abuse / False Charges /** Abuse of Justice System:

---

**20**21

**Curse & Abuse; Bullying / Violent Threats / False Charges - Abuse of Justice System**
July 16, '21:

Ms. Riddick (& family) threatened to beat & fight me; cussed & berated me and tried to run me off the road. While I was working in my front-yard flower garden, Ms. Riddick startled me by yelling profanity from her doorbell intercom: *"Hey bitch, I can see you. I hate yo' **old** ass."*
*Motherfucker, don't come near my yard. Fucking Bitch!"*
I stumbled and almost fell. A neighbor walked to my door, and we went inside. Ms. Riddick continued to scream through her intercom (from a remote location), as we stood inside my house.

Shortly, Ms. Riddick and her Sister (caregiver) arrived. They stood outside her condo unit (next-door to mine), cussed and threatened to do me bodily harm. <u>Ameka</u> <u>Riddick</u> said:
*"I'm so sick of yo' old ass, Bitch. I'm going to beat your motherfucking ass.*
*My daughter is coming, and we gonna' kick yo' **old** motherfucking ass!"*

Then her Sister (the caregiver) yelled: *"Fuck yo' **old** ass, bitch. We're gonna fuck your ass up!"*
When Ms. Riddick's daughter (<u>Alexus</u> NaShay <u>Riddick, age 26</u>) arrived, she parked her car closely behind my car. As she jumped and stomped on my brick flower-garden border, she yelled:
*"I got you blocked in bitch, so you can't go no damn where.*
*I'm sick of yo' **old** ass, and I'm gonna kick yo' motherfucking ass.*
*I'm gonna fuck yo' ugly ass up, motherfucker!*
*Come on outside, Bitch, so I can fuck yo' **old** ass up!"*

[*see* **Exhibit 4:** Affidavit Testimony]

I called Emergency. When the Police arrived, the officers directed me to file an Emergency Protective Order at the Magistrate's office. The neighbor, who witnessed some of her behavior, accompanied me.

**Reckless Driving / following too Closely & Curse and Abuse**
As I drove out of the Charlestowne court, her daughter (Alexus Riddick) followed me (too closely). She continued her reckless driving on Greenwood Dr. When I pulled my car off the road and stopped, Alexus Riddick stopped her car on Greenwood Dr. (in the right lane) closely beside me and yelled the same profane threats out of the window.

**Blocking my Driveway**
When my neighbor and I returned from the Magistrate's office, Ms. Riddick had parked her car partially in my driveway and partially in her own. She was standing outside her door with a cell phone positioned to photograph me. I called Emergency. When the same Police officers arrived, Ms. Riddick hurried inside her house. After observing her car partially in my driveway, one Police officer knocked on her door and directed her to "*move your car.*"

<u>Police Officer</u> (Shelton Gonzalez) <u>agreed to testify</u> in court. However, she did not appear in Court, although she was subpoenaed. Neither did she return Plaintiff's call concerning message left at the Police Records Office.

[*see* **Exhibit 5:** Subpoena Request]

---

July 19, '21: **False charge: "Trespassing " / Abuse of Justice System**
Ms. Riddick falsified criminal charges to have me arrested & jailed for "trespassing" her front yard (condo common area). My trial is set for Oct. 27, 2021.

[*see* **Exhibit 6:** Affidavit Complaint]

8

16. **Disorderly Conduct / Curse & Abuse / False Charges /** Abuse of Justice System:

---

**2021**

Aug. 25, 2021  **Curse and Abuse, Violation of Protective order**
    11;30 p.m.    As I drove into my driveway, my escort walked across the parking lot toward my car. Another escort was standing at the head of my driveway waiting for me to park. Ms. Riddick was sitting in her car, parked directly beside me. Before I got out of the car, she started yelling emotionally from inside her car:

        "*Lies, lies, lies! All she do is tell a bunch of lies!*
        *She calls herself using a damn escort. I'm so sick of her!*
        *I'm moving out of here. I'm just sick of all her 'old ass' lies!*"

    Neither of the men nor I responded. We proceeded to walk to my front door.
    While Ms. Riddick was still cussing loudly and accusing me, one man whispered to me:

"*Ms. Angel, be careful. She's on something. I don't know what it is, but she's on something.*"

    As the man walked away toward his home, Ms. Riddick called to him:
        "*Sir. Sir. Hey Sir. She's a liar! All she do is tell a bunch of lies!*"
    The man kept walking and responded quietly, "*Ma'am, I don't have time for it.*"

                                                              [*see* **Exhibits 7 & 8:** Affidavit Testimony]

Sept. 28, 2021  **Curse and Abuse**
    Ms. Riddick yelled and cussed at me from her front and back yards:
        **Old**-*ass bitch! I'm ti'ed of yo' old ass, bitch!*
        *You mad 'cause Don Scott's election sign is in my yard.*
    *This ain't no condo. This is a townhouse! I'm so damn ti'ed of you—**old**-ass motherfucker!*
    *You ain't got no house worth nothing. Buy yourself a hundred-thousand- dollar house, bitch!*
        *I'm bi-polar and schizophrenic, and 'dey ain't gon' do nothing to me!*"

                                                                    [Witnesses available]

---

17. The foregoing factual allegations are more than sufficient to support the inference that the property manager and landlords knew, or should have known, that Tenant (Ameka Danielle Riddick) was "likely to cause harm and injury to others."

18. The Property manager and Landlords were/ are expected to conduct criminal background checks; their Tenant's [illegal] background includes:
    - 2003 charged with: Brandishing a firearm.
    - 2003 charged with: Assault & Battery.

19. Plaintiff repeatedly complained to defendants about the Tenant's belligerent, combative, violent, and destructive behavior.

20. In this 2-year period, Plaintiff sent numerous text messages and Affidavit letters to defendants about Tenant's ongoing harassment, 'curse & abuse,' property destruction, and violent threats:
    - loud, disturbing music;
    - fighting & throwing people against the wall;
    - property destruction
    - threatening to shoot Plaintiff
    - multiple false criminal charges.
    - cussing & screaming at Plaintiff (from inside and outside the rental unit);

21. However, <u>Defendants</u> <u>responded</u> with <u>disrespect</u>, thereby "aided and abetted" Tenant's disorderly, harassing, and criminal acts:

22. Defendants had and have a duty to "*exercise reasonable care in their supervision of* [Tenant Ameka Riddick] *for the protection of innocent members of the public:*"

23. The injuries Plaintiff has suffered are the proximate result of the property manager and landlords' breach of that duty.

24. The Plaintiff's prayer for compensatory and punitive damages is based upon the factual evidence that the defendants' <u>conduct</u> "evidenced a conscious, willful, wanton, and reckless disregard for the rights of innocent members of the community."

25. **VIOLATIONS**

**The Older Americans Act.**
42 US Code § 3001 (3) & (10) -- Abuse of 'Older Persons':

The Congress hereby finds and declares that, in keeping with the traditional American concept of the inherent dignity of the individual in our democratic society, the **older people** of our Nation **are entitled** to, and it is the joint and several duty **and responsibility of the governments** of the United States, of the several states and their political subdivisions … to **assist** our **older people to secure equal opportunity to the full and free <u>enjoyment</u>** of the following objectives

  (3) Obtaining and maintaining suitable housing, independently selected, designed and located with reference to special needs …

  (10) Freedom, independence, and … **protection against abuse, neglect, and exploitation.**

26. Defendants violated Plaintiff's elderly "*protective rights against abuse, neglect, and exploitation.*"

27. Property Manager and Landlords are vicariously liable for their young Tenant (age 46), exploiting, the elderly Plaintiff (age 66) and disturbing her peace by:
    - curse & abuse;
    - property destruction;
    - violent threats;
    - 'disorderly conduct;'
    - multiple false criminal charges;

28. Plaintiff cannot" maintain the suitable housing she independently selected," as long as defendants "abuse, neglect, and exploit" the owner-occupant's federal rights to freedom and independence.

29. Plaintiff cannot maintain the suitable housing she independently selected, as long as defendants' Tenant disturbs the peace with 'cussing,' violent threats, property destruction, disorderly conduct, and multiple false criminal charges.

30. As an older American, Plaintiff is entitled to and it is the federal Court's responsibility to assist her in securing equal opportunity to the full and free enjoyment of the home she rightfully owns.

31. It is also the federal Court's responsibility to assist other older American homeowners with securing equal opportunity to the full and free enjoyment of the <u>homes they purchased</u> before the cussing, disorderly, and violently threatening Tenant and her family arrived.

32. On Sept. 28, 2021 Tenant Ameka Riddick disclosed that she was psychologically and behaviorally ill, as she loudly cussed at Plaintiff from the front and backyards of defendants' condo unit:
    *I'm bi-polar and schizophrenic, and they ain't gon' do nothing to me!"*

33. Although her behaviorally-ill health condition has long been suspected, it does <u>not legally excuse</u> her from the civil and criminal wrongs asserted in this complaint.

34. Thus, Plaintiff requests the Court to: <u>order eviction</u> and forbid the Tenant to relocate in the same community.

35. **Dudley v. Offender Aid and Restoration of Richmond, Inc.**
    **Supreme Court of Virginia** Record No. 900994:   March 1, 1991.

    William R. Dudley, Administrator of the Estate of Debbie Dudley Davis, brought this action against OAR to recover compensatory and punitive damages for both the **non-fatal** and fatal personal **injuries** suffered by Debbie Davis at Spencer's hands. ... He alleged that OAR **had a duty to exercise reasonable care** in its supervision of Spencer **for the protection of innocent members of the public** ... and that the injuries she suffered were the proximate result of OAR's breach of that duty. The Administrator's prayer for punitive damages is based upon an allegation that **OAR's conduct** "*evidenced a conscious, willful, wanton, and reckless disregard for the rights of innocent members of the community.*" ...

    **In the present case**, the **factual allegations are more than sufficient to support** the inference **that OAR knew, or should have known, that Spencer was "***likely to cause bodily harm to others***"** ...

    Because the **trial court erred in sustaining the demurrer**, we will reverse the judgment and remand the case for further proceedings consistent with this opinion.                                                                        Reversed and remanded.

36. As landlord and property manager, defendants had a duty to exercise reasonable care in their rental and tenant management -- to control or correct their Tenant, in efforts to protect innocent members of the public.  However for practically two (2) years, defendants have "breached their duty," and Plaintiff has suffered repeated harassment:  violent threats, and false criminal charges for which defendants are vicariously liable:
    - loud, disturbing music
    - fighting & throwing people against the wall;
    - property destruction
    - threatening to shoot Plaintiff
    - multiple false criminal charges.
    - cussing & screaming at Plaintiff (from inside and outside the rental unit);

37. Plaintiff repeatedly complained to Defendants about Tenant's combative and belligerent behavior: She sent numerous text messages and Affidavit letters to Defendants about Tenant's ongoing harassment.  In an affidavit, Plaintiff requested Tenant's legal name, but Defendants' responded disrespectfully and refused to offer any assistance to restrain or stop Tenant's violent behavior toward the next door homeowner.

38. Defendants' <u>conduct</u> "*evidences conscious, willful, wanton, and reckless disregard* for Plaintiff's *rights as an innocent member of the community.*"  The factual allegations are more than sufficient to support the inference that defendants "*knew, or should have known,*" that Tenant (Ameka Riddick) "*was likely to cause* [severe] *harm to others.*" Thus, they had a duty to exercise reasonable care to prevent that harm, but they refused and failed.

39. The injuries Plaintiff has suffered are the proximate result of defendants' breach of that duty.

40. Plaintiff's prayer for punitive damages is based upon 'prima facie' evidence that the defendants' <u>conduct</u> "*evidences a conscious, willful, wanton, and reckless disregard for the rights of innocent members of the community.*"

41.       **18.2-46.5   Committing, Conspiring and Aiding and Abetting acts of Terrorism [violence] prohibited:  penalty.**

    B.  Any person who commits, conspires to commit, or **aids and abets** the commission of an **act of terrorism** [violence], as defined in § 18.2-46.4, is guilty of a class 3 felony if the maximum penalty for the base offense of such act of terrorism is a term of imprisonment or incarceration in jail of less than twenty years.

42. Because Defendants refused to offer any assistance to restrain or stop Tenant Ameka Riddick's violent behavior toward Plaintiff (next door homeowner), they have "aided and abetted" in the commission of an act of terrorism.

43. For practically two (2) years, Plaintiff has suffered repeated harassment and violent threats for which Defendants are vicariously responsible:
    - loud, disturbing music;
    - fighting & throwing people against the wall;
    - property destruction
    - threatening to shoot Plaintiff
    - multiple false criminal charges.
    - cussing & screaming at Plaintiff (from inside and outside the rental unit);

44. Defendants' failure to exercise reasonable care in prevention of Tenant's violent threat(s) toward Plaintiff renders them guilty of the crime of
    *"aiding and abetting in commission of an act of terrorism."*

---

**18.2-137  Injuring, etc., any Property,  :**

A.  If any person **unlawfully destroys, defaces, damages**, or removes without the intent to steal **any property**, real or personal, not his own, …he shall be guilty of a class 3 misdemeanor, provided that the Court may in its discretion, dismiss the charge if the locality or organization that owns or is responsible for maintaining the injured property, … **files a written affidavit with the Court stating it has received full payment for the injury**.

---

45. Because Defendants refused to exercise reasonable care to prevent their Tenant from destroying Plaintiff's property, they are vicariously liable for the property damage:

46. April 19, 2020:  Tenant snatched up Plaintiff's flowers while loud talking to her friends. Plaintiff text Property Manager Hines that she would be filing complaints against him & Landlord Philippi in Ports. Gen. Dist. Court.

47. June 10, 2020:  Tenant pulled up numerous flowers from Plaintiff's front flower bed and threw them (with attached dirt) onto Plaintiff's walkway and into her left, front flower bed. Because Plaintiff discovered the destruction at night, she walked in it, tracked dirt into her home, and soiled her ceramic tile floor and carpet.
    Police obtained Testimony:
    (11:48 p.m.) Police officer arrived, went next door & spoke w/ Tenant.
    He asked if she pulled up the flowers next door and threw them on the neighbor's property. Tenant responded,   *"Because they were on my side."*

48. [§ 18.2-137] states that the Court has discretion to dismiss the charge and require full payment payment for the injury.   Repair and replacement is estimated at $ 3,000.   Thus, Plaintiff requests full payment for the injury.
    [*see* **Exhibit 9:**  Landscaping  Estimate]

**CONCLUSION**

49. WHEREFEFORE, Plaintiff has been exploited by the Tenant, Property Manager, and Landlords. Clearly, they have 'aided and abetted' Tenant and her family in harassing and abusing this elderly citizen and Condo owner-occupant:
    - multiple false criminal charges;
    - property destruction;
    - disturbing the peace;
    - violent threats;
    - 'disorderly conduct;'
    - abusing the court and justice system.
    - curse & abuse;

50. Defendants knew and still know that their Tenant is psychologically and behaviorally ill. On Sept. 28, 2021, she yelled  her condition outside, as she cussed at the Plaintiff:
    *I'm bi-polar and schizophrenic, and they ain't gon' do nothing to me!"*

12

51. That disclosure indicates that the Tenant is participating in [illegal] "entrapment" against the Plaintiff. Orchestration of the feigned infractions, falsified protective orders, and ultimately abuse of the justice system is much too sophisticated for her.
[*see* **Stamper v. Commonwealth** 228 Va. 707, 324 S.E.2d 682 (1985)]

52. Via the 'Older Americans Act, this elderly Condo 'owner-occupant' is:
    *"protected against abuse, neglect, and exploitation."*
    Decisions of the Supreme Court of Virginia and various Virginia State codes declare and/or support that, the defendants' <u>conduct</u>,
    *"evidences conscious, willful, wanton, and reckless disregard
    for* Plaintiff's *rights as an innocent member of the community."*

53. All defendants are vicariously liable for the harm and injury inflicted upon Plaintiff for two (2) years. Thus, they must be made to pay punitive and business conspiracy damages to Plaintiff.

### PRAYER for Relief

54. The [pro se] Plaintiff requests this Court to enter judgment against the Defendants (each of them) pursuant to the foregoing violations and claims. Make her whole:

    A. Court Costs.  -- $    402.
    B. § 8.01-38.1 -- Punitive damages (including $ 3,000. Landscaping) -- $ 100,000.
    C. § 8.2-499, 500 -- Treble damages for Business conspiracy  -- $ 300,000.
    D. Declare a 'court-ordered <u>freeze</u> on [defendants'] <u>corporate</u> and <u>personal</u> **Assets**.'
    E. Prosecute Defendants pursuant to criminal law charges.
    F. <u>Order</u> Tenant to <u>relocate</u> from this 'Charlestowne Condominium' community
       (for protection of the Plaintiff, Witnesses and other condo owners in the community).
    G. Stop government funding to Tenant and her sister (caregiver).
       They should <u>not</u> be paid government funds to constantly violate the law.
    H. Tenant's teenage <u>son</u> is being <u>psychologically</u> <u>abused</u> and emotionally traumatized, being forced to live with a parent who displays constant erratic behavior and emotional instability (behaviorally-ill symptoms). Child Protective Services should be court-ordered to investigate and possibly remove him from her house.

55. Plaintiff reserves the right to amend this Complaint and Exhibits at any time, up to and including the day of trial, whether by order of the Court or pursuant to Supreme Court of VA Rules.

56. Plaintiff also reserves the right to present other evidence, documentary or otherwise as rebuttal, at any time up to and including the day of trial.

| Lawyer Malpractice |

**Attorney / Client Collusion & Liability**

1. The law firm of 'Don Scott Law, PLLC' practices law in the following areas: civil rights, employment & workforce, personal injury, real estate, family law & criminal justice.

2. Consequently he advised, advocated, urged, and supported the individual defendants and their enterprises in tortious conduct and criminal acts against Plaintiff.

3. Attorney(s) in this law firm are aware of defendants' business dealings with Charlestowne Condo. Association.

4. Attorney(s) in this law firm are aware of the Tenant's psychological / behavioral illness.

5. The law firm and/ or attorney(s) have participated in legal decisions regarding Charlestowne Condo unit owners.

6. The law firm and/ or attorney(s) have participated in defendants' legal decisions regarding Plaintiff.

7. The law firm and/ or attorney(s) have advised or counseled defendants not to answer Plaintiff's calls, texts, or letters.

8. The law firm and/ or attorneys are aware and have advised or counseled defendants not to answer Plaintiff's complaints and/or requests (oral or written) to stop Tenant harassment/ injury.

9. The high-profile attorney colluded with State magistrates and influenced them to charge Plaintiff with false crimes.

10. The defendants could not have persisted in harming and injuring Plaintiff, without the assistance, cooperation, advice or instruction of skilled, legal professionals.

11. The law firms and/ or attorneys have advised defendants not to disclose their specific legal service or assistance concerning the foregoing acts.

12 The law firm and attorney(s) have participated in secondary liability arising from a concerted action.

13. Neither the defendants nor the attorney(s) are concerned about consequences of their decisions and actions regarding the Plaintiff.

---

**Affidavit Declaration**

I swear (affirm) under penalty of perjury that the statements made in this Complaint [Affidavit] are true and correct to the best of my knowledge.

this ___30th___ day of ___September___, 2021.

By _[signature: Joelle Joy Angel]_
(Pro se)
Joelle Joy Angel
1631 Darren Circle
Portsmouth, VA 23701
(434) 532-2682     _√_ Plaintiff          ___ Plaintiffs' Attorney

---

**Ghostwriting Certificate**

I certify that I did not receive help from an attorney in preparing this complaint.

---

**Certificate of Service**

I certify that a copy of the Complaint [Affidavit] was delivered to the Clerk of Court and mailed to Defendants or Counsel for Defendants:

Kim Philippi   &
Alliance Investment & Consulting, LLC
1408 Duck Run Ct.
Virginia Beach, VA 23455

Chang Philippi   &
Alliance Property Holdings
1408 Duck Run Ct.
Virginia Beach, VA 23455

Ameka D. Riddick
1629 Darren Circle
Portsmouth, VA 23701

Lionel T. Hines, Sr.
119 Kings Gate Dr.
Portsmouth, VA 23701

Jason Roebuck, Esq.
Asset Recovery Associates
5350 Kemps River Dr. (Suite 113)
Virginia Beach, VA 23464

Don Scott, Esq.
Don Scott Law, PLLC
355 Crawford St.
Portsmouth, VA 23704

this ___30th___ day of ___September___, 2021.

By _[signature: Joelle Joy Angel]_
(Pro se)
Joelle Joy Angel
1631 Darren Circle
Portsmouth, VA 23701
(434) 532-2682         √ Plaintiff              Plaintiff's Attorney

15